# ORPHANS' COURT OF PHILADELPHIA.

### LEWIS'S ESTATE.

PRINCIPAL AND AGENT—POWER OF MARRIED WOMAN TO CHARGE
HER SEPARATE ESTATE FOR REPAIRS, ETC., RESULTS FROM
CONSTRUCTION AND IMPLICATION, AND NOT FROM THE EXPRESS
WORDS OF THE STATUTE—EVIDENCE NECESSARY TO CHARGE
SUCH SEPARATE ESTATE—QUÆRE, WHETHER "NECESSITY" IS
NOT IMPLIED IN THE WORD "REPAIR"   ACT OF APRIL 11,
1848.

Sur exceptions to re-adjudication.

The adjudication on the account of the executors of Mary
F. Lewis, the decedent, having been opened, by agreement
of counsel, to allow a re-argument, a revised statement of a
claim (rejected on the first audit) was presented by William
M. Wright & Bro., plumbers, for work done and materials
furnished by them for the separate estate of decedent, to
the amount of $85.13.

It there appeared that the said expenses were incurred
by Dr. Lewis, the husband of decedent, in his own name,
but for the benefit of his wife's separate estate, and while
acting with her consent and as her agent.   Demand had
been made upon the legal representatives of Dr. Lewis, now
deceased, and payment of the claim to the extent of avail-
able assets had been made.

To the allowance of this claim by the auditing Judge
(ASHMAN, J.), exceptions were filed by the accountants
because the work was done on the credit of the husband,
and not on the credit of the wife or of her separate estate,
and because there was no evidence that the work was
necessary.

*Peter McCall*, for exceptants.

The work was done on the credit of the husband of the
decedent, and not on her credit nor the credit of her separ-
ate estate; therefore, her separate estate is not liable.

Berger and wife vs Clark, 29 Sm. 340.
Sawtelle's App., 3 Nor. 306.
Leow's Est., 6 WEEKLY NOTES, 333.

There was no evidence to show that the work done was necessary for the improvement or repair of the decedent's separate estate, and unless necessary there could be no recovery, even if done on her credit or that of her separate estate.

Kuhns and wife vs. Turney. 36 Leg. Int. 37.

*J. de F. Junkin*, contra.

There is no express statutory provision which renders the separate estate of a married woman liable for repairs. The liability is created by the line of decisions under the provision of sec. 6 of Act of April 11, 1848.

Husbands on Married Women, sec. 50, and notes.

The first exception is based upon decisions under sec. 8 of the same Act, which is in reference to family necessaries, and not repairs to wife's separate estate; such a case is Berger vs. Clark (*supra*).

To bind the wife's separate estate for repairs thereto, it is not necessary that the credit should be given to her directly.

Lippincott vs. Hopkins, 7 Sm. 28.
Lippincott vs. Leeds, 77 Sm. 492.

There can be no doubt of a married woman's power to charge her estate for necessary repairs, and that she can also do it by an agent, such agent being her husband, is decided in—

Murphy vs. Bright, 3 Gr. 296.
Forrester vs. Preston, 2 Pitts. 298.

Dr. Lewis was the agent of an undisclosed principal, but the disclosure of the principal is not necessary in order to bind the principal by the agent's acts within the scope of his authority.

That the work was necessary, is impliedly, if not explicitly, found by the auditing Judge.

The claim was for plumbing such as is necessary in ordinary buildings, and was recognized as such by the decedent.

From the nature of the work it was presumptively necessary, and the wife's estate is liable therefor.

Barto's App., 5 Sm. 389

April 5, 1879.    The Court.    The power of a married

woman to charge her separate estate with debts for ne-
cessary repairs or improvements, results not from the
words of the statute, as in the case of necessaries furnished
to her family, but rather from construction and implication
(Kuhns and Wife vs. Turney, 36 Legal Intell. 37; Shannon
vs. Shultz, Id. 125). "If," says GORDON, J., in the case
first cited, "she is to *enjoy* her property, it *must* be that she
shall have the power to keep it in a proper condition for
use or profit."

The reason thus given applies, to the extent of her in-
terest, whether her ownership is in severalty or in common
with others; nor is there anything, either in the letter or
spirit of the Act, which requires that the contract for such
repairs, etc., shall be made by herself individually and not
through the agency of a third person; or which exempts
her from liability where credit is given to the agent acting
for an undisclosed principal.

When it is sought to charge her or her estate for repairs
or improvements, it is necessary to show that she was an
owner of the property in respect of which the work was
done or the materials were furnished; that she, by herself
or her agent, made the contract; and that the work done
or materials furnished were necessary for the use and enjoy-
ment of the property.

In the present case the claim, as amended, is for the
decedent's proportion of the repairs upon property of which
she was a co-owner. The fact of such ownership is found
by the adjudication, as is also the fact that the work was
done at the instance of decedent through the agency of her
husband.

It is objected, however, that it was not shown affirma-
tively, nor is it so stated by the adjudication, that the
repairs were necessary. This, perhaps, is explained by the
fact that the amount in controversy is very small ($85),
and that a letter from the accountant to claimant's counsel
was exhibited, in which it was stated that the claim as
amended "was just and equitable, and that no objection to
its allowance would be made." Naturally after this a full

statement of facts would hardly be deemed important.

But the necessity for the work is perhaps implied *ex vi termini* by the word "repair," the definition of which, as given by Webster, is a "restoration to a sound or good state after decay, waste, injury, or partial destruction."

If, however, there is any doubt on this point, as the letter alluded to may have misled, it is proper that an opportunity of proving that the repairs were necessary should be afforded, if the fact be denied. The account will, therefore, if the accountant asks for it, be referred back to the auditing Judge for this purpose. Should no such request be made within two weeks from the date of filing this opinion, we shall assume the fact to have been shown and the adjudication amended accordingly, and dismiss the exceptions.

Opinion by PENROSE, J.

The Judge, in *Lanier vs. Mayor and Council of Macon*, 59 Ga. 187, does us the honor to hold that we lawyers are a "profession," within the meaning of a statute for taxation. We could well have dispensed with the compliment for the sake of the exemption. The statute authorized "a tax upon factors, brokers and venders of lottery tickets, upon agents or managers of gift enterprises, and upon all other persons exercising within the city any 'profession,' trade or calling of any nature, whatever." It was argued that "profession" here meant something connected with the previously-mentioned classes of persons; but the court say: "As the word profession has long been used and understood in Georgia, its application to lawyers and physicians is instantly recognized and clearly comprehended. To suppose it used with any reference to factors, brokers, venders of lottery tickets, and agents or managers of gift enterprises would be doing unheard-of-violence. We are not aware that these classes have ever, anywhere or by anybody, been called professional persons, or considered as exercising a p rofession." Our own impression is that the Legislature meant "professional gamblers," but we do not press that view in opposition to the court.