THE STATE OF FLORIDA EX REL, LEE J. CLYATT, RELATOR, VS. WILLIAM A. HOCKER, JUDGE OF THE CIRCUIT COURT FOR THE FIFTH JUDICIAL CIRCUIT OF FLORIDA, RESPONDENT.—MANDAMUS.

CONSTITUTIONAL LAW—OFFICE AND OFFICER—STATE OFFICER—CHAPTER 4539 LAWS APPROVED JUNE 5, 1897, CREATING A STATE BOARD OF LEGAL EXAMINERS DECLARED UNCONSTITUTIONAL.

1. The term "office" implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the

office, a public office being an agency for the State, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration and duties, and has respect to a public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts or duties, as a part of the regular administration of the government, the place and the duties remaining, though the incumbent dies or is changed; every office in the constitutional meaning of the term implying an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws. A *State* officer is one who falls within this definition and whose field for the exercise of his jurisdiction, duties and powers is co-extensive with the limits of the State and extends to every part of it.

2. Chapter 4539 laws approved June 5, 1897, entitled: "An Act to Regulate Admissions to the Bar of this State, to Create a Board of Legal Examiners, and to provide for a Uniform System of Legal Examinations," *held*, to be unconstitutional and void because it creates *State officers* in the Board of Legal Examiners therein provided for, and fails to provide for their election by the people or appointment *by the Governor*, as required by the Constitution, but makes them appointive by the Supreme Court, contrary to the Constitution; and, contrary to the Constitution, fixes their terms of office for a period longer than four years.

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the court.

*Syd L. Carter*, for Relator.

*W. A. Hocker*, *in pro. per.* and *E. J. L'Engle*, for Respondent.

TAYLOR, C. J.:

Lee J. Clyatt, by his petition for mandamus filed as an original proceeding in this court, alleged that he was over the age of twenty-one years and a resident and citizen of Alachua county, in the Fifth Judicial Circuit of Florida, of which judicial circuit the respondent is the presiding judge. That on the 9th day of July, A. D. 1897, at Ocala, in Marion county, within said judicial circuit, he applied by petition to the respondent, as judge, for admission to the bar of said Circuit Court, and submitted with said petition satisfactory evidence that he was twenty-one years of age and of good moral character, and thereby prayed the said judge that he, the said judge, should examine into his qualifications, or require such examination to be made by two members of the bar of said court, and if found to be qualified that he, the said judge, should grant to him a license to practice law in the several courts of the State of Florida, according to the provisions of rules 1 and 2 of the Rules of Practice for the government of the Circuit Courts in common law actions; but that the said judge then and there refused, and still refuses, either personally to examine into his qualifications to be admitted to the bar of said Circuit Court, or to appoint two members of the bar of said court to make such examination, whereby he, the said Clyatt, is deprived of his right to be put to his examination touching his qualifications to practice law in the courts of this State, and, if found qualified, to be licensed to so practice law. Upon this petition an alternative writ of mandamus issued from this court to the respondent as Circuit Judge, returnable on the 20th of July, 1897.

480        SUPREME COURT.

State of Florida ex rel. Clyatt v. Hocker, Judge.—Opinion of Court.

The respondent now moves to quash the alternative writ upon the grounds: 1st. Because the alternative writ shows that the application made by relator to respondent to be granted license to practice law was made under common law rules one (1) and two (2) of the Rules of Practice prescribed by the Supreme Court of Florida and under and in pursuance of the law as contained in the Revised Statutes of Florida, sec. 979. 2d. Because the power and authority to license attorneys-at-law is now exclusively conferred upon a State Board of Legal Examiners by the provisions of chapter 4539, laws approved June 5, 1897, entitled "An act to regulate admissions to the bar of this State, to create a Board of Legal Examiners, and to provide for a uniform system of legal examinations."

The recent act of the Legislature thus urged as the respondent's reason for refusing to entertain the relator's application for examination and admission to practice law, and as the ground of his motion to quash the alternative writ, is as follows:

CHAPTER 4539—[No. 25.]

AN ACT to Regulate Admissions to the Bar of this State, to Create a Board of Legal Examiners, and to Provide for a Uniform System of Legal Examinations.

*Be it enacted by the Legislature of the State of Florida:*

SECTION 1. That the State Board of Legal Examiners is hereby created, to consist of five (5) members, who shall be appointed by the Supreme Court of Florida, one of whom shall hold his office for one year, one for two years, one for three years, one for four years, and one for five years, and each until his successor shall be appointed and qualified, and each year

thereafter another examiner shall be appointed for the term of five years in the stead of the examiner whose term shall have expired. Said board shall have the power to make by-laws and rules necessary for the fulfillment of their duties.

SEC. 2. It shall be the duty of said Board of Legal Examiners to examine all applicants for admission to the bar of this State, in respect to their intellectual, moral and professional qualifications, in accordance with such uniform and general regulations as they may adopt and publish. When said board, after such examination, shall be satisfied of the qualifications and fitness of an applicant, and upon his taking the oath required by law, they shall grant him a certificate to that effect, which certificate, when registered as hereinafter provided, shall entitle him to practice law in all of the courts of this State.

SEC. 3. That said board shall hold at least one examination a year in each of the circuits of this State, from which applications shall be received. Two members with the authority of said board, may conduct any such examination, in accordance with the rules of the board; Provided, That the subjects for such examination shall first be prescribed by the said board.

SEC. 4. Said Board of Legal Examiners shall be entitled to collect from each person examined, a fee not to exceed the sum of five dollars, which fees shall be used to defray the expenses of said board. The expenses of said board shall not be paid or chargeable to this State.

SEC. 5. All certificates so issued by said board shall be filed with, and registered by the Clerk of the Supreme Court, for which service he shall be entitled to

the same fee as is now provided by law for certificates of admission to the Supreme Court.

SEC. 6. All laws or parts of laws in conflict herewith, or any part hereof, are hereby repealed, and this act shall take effect from its approval by the Governor.

The relator meets this motion to quash the alternative writ with the contention that the said act of the recent Legislature is unconstitutional and void: 1st. Because it violates the following section 27 of Article III of the State Constitution: "The Legislature shall provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution, and fix by law their duties and compensation." 2d. Because it further violates the following section 7 of Article XVI of the Constitution: "The Legislature shall not create any office the term of which shall be longer than four years." 3d. Because the act of admitting an attorney to the practice of law at the bar of the courts is a *judicial* act, and the exercise of a *judicial function* and that it is such a judicial power as can not be delegated by the Legislature to a Board of Legal Examiners of its own creation. That in so doing the statute violates Article II of the Constitution that prohibits the exercise by any person belonging to any one of the three great departments of the State Government of any power appertaining to either of the others.

If this act of the late Legislature does not violate any of the mandates, limitations or restrictions upon legislation as contained in the Constitution, then the respondent was right in refusing to entertain the application of the relator; but if it violates the organic

law, it is void, and furnishes no reason for such refusal.

The first and second grounds urged against its constitutionality makes it necessary to respond to the questions:   1st.   What is an *office*, within the contemplation of the quoted provision of the Constitution requiring the Legislature to provide for the election by the people, *or appointment by the Governor*, of all State and county officers not otherwise provided for by the Constitution?   And are the members of the "State Board of Legal Examiners," provided for by this act such *officers* as are required by the Constitution to be elected by the people or appointed *by the Governor?* 2d.   Is the said State Board of Legal Examiners such an *office* as that the *term* thereof is prohibited by the Constitution from continuing longer than four years? Chief-Justice MARSHALL, in the leading case of United States vs. Maurice *et al.*, 2 Brock, (U. S. C. C.) 96, defines an *office* and an *officer* as follows:   "An office is defined to be 'a public charge or employment,' and he who performs the duties of the office, is an officer. Although an office is 'an employment,' it does not follow that every employment is an office.   A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer.   But if a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, if those duties continue, though the person be changed; it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer."

In the Advisory Opinion of the Judges of the Supreme Court to the Governor, in 3 Maine, 481, it is said that "there is a manifest difference between an office, and an employment under the government. We apprehend that the term 'office' implies a delegation of a portion of the sovereign power to, and possession of, it by the person filling the office; and the exercise of such power within legal limits, constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still it is a legal power, which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the State."

In State *ex rel.* vs. Kennon *et al.*, 7 Ohio St. 546, it is held that the official or unofficial character is to be determined not by the presence or absence of an official designation, but by the nature of the functions to be performed. That if the duty, charge and trust to be performed is conferred by public authority, for public purposes of important character, and are not transient, occasional, or incidental, but durable, permanent and continuous, then it is a public office, and the person having power to perform it is a public officer. In the same case it is held that though *emolument*, is a usual, yet it is not a necessary, element to constitute an office. State *ex rel.* vs. Anderson, 45 Ohio St. 196.

In Shelby vs. Alcorn, 36 Miss. 273, it is said that "an office is a continuing charge or employment, the duties of which are defined by rules prescribed by law, and not by contract, and the person who fills it is an officer."

In United States vs. Hartwell, 6 Wall. 385, it is said that "an office is a public station or employment, conferred by the appointment of government; and embraces the ideas of tenure, duration, emolument and duties."

These and substantially similar definitions of the terms *office* and *officer* will be found to have been adopted and acted upon in the following cases: Bunn *et al.* vs. People *ex rel.*, 45 Ill. 397; *Ex parte* Gregory Yale, 24 Cal. 241; Lindsey vs. Attorney-General, 33 Miss. 508; Hill *et al.* vs. Boyland *et al.*, 40 Miss. 618; Eliason vs. Coleman, 86 N. C. 235. In this last cited case it is said that "the true test of a public office is that it is parcel of the administration of government, civil or military or is itself created directly by the law-making power; and an information in the nature of a *quo warranto* only will lie to recover same." State *ex rel.* Clark *et al.* vs. Stanley *et al.*, 66 N. C. 59 S. C. 8 Am. Rep. 488; People vs. Hayes, 7 How. Pr. 248; *In re* Corliss, 11 R. I. 638, S. C. 23 Am. Rep. 538; People *ex rel.* Throop vs. Langdon, 40 Mich. 673; State *ex rel.* Attorney-General vs. Wilson, 29 Ohio St. 347; Bradford vs. Justices Inferior Court, 33 Ga. 332; Case of Daniel Wood, note (b) to Seymour vs. Ellison, 2 Cow. 29; People vs. Bedell, 2 Hill, 196; Lewis vs. Jersey City, 51 N. J. L. 240, 17 Atl. Rep. 112; Matter of Hathaway, 71 N. Y. 238; People *ex rel.* vs. Nostrand, 46 N. Y. 375; In the Matter of Oaths by Attorneys, 20 John. 493; Porter vs. Pillsbury, 11 How. Pr. 240; 7 Bacon's Abr., *Title*, Offices and officers, pp. 279, 280. In 19 Am. & Eng. Ency. of Law, p. 382 *et seq.*, the various definitions and essential elements of the term "office," as given in the cases cited, and others, is very aptly and correctly summarized as follows: "The

term 'office' implies a delegation of a portion of the sovereign power to, and possession of, it by the person filling the office, a public office being an agency for the State, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts or duties, as a part of the regular administration of the government, the place and the duties remaining, though the incumbent dies or is changed, every office in the constitutional meaning of the term implying an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws." Mechem on Public Officers, secs. 1 to 9 inclusive, and citations.

Applying these tests to the statute under consideration, we are clearly satisfied, and without any semblance of doubt, that the Board of Legal Examiners created thereby, as the medium through whom the privilege of practicing law is to be conferred upon the citizen, are such *officers* as our Constitution requires the Legislature to provide for the creation of in one or the other of the two prescribed modes, *viz:* Either by election by the people, or by appointment *by the Governor*. Legislative regulation of skilled trades and learned professions, in order to prevent the widespread damage that would result from their unskilled exer-

cise, is generally conceded to be a legitimate exercise of the police power of the State. Tiedeman's Lim. of Police Power, sec. 87 and cases cited. The act in question makes the Board of Legal Examiners created by it the sole and exclusive instrument by and through which this highly important and delicate governmental power is to be exercised, and thereby confers upon them the exercise of governmental functions. The duties it prescribes for them are lasting and continuous, and not merely casual, temporary or incidental, but the place and the duties remain even if the persons appointed to perform them shall die or resign. It prescribes a regular tenure of office with fixed periods when successors are to be appointed; and emoluments are prescribed, parsimonious though they be in amount. The office and the officers are created by governmental authority, for the discharge of legally prescribed public duties, as part of the sovereign power of the State and for the public good. They are not only clothed with power to apply the test of fitness of all applicants, and to judge of such fitness, but are further empowered, by rules, of their own adoption, to prescribe the scope and character of such test. They are *State* officers because the field for the exercise of their jurisdiction, duties and powers is co-extensive with the limits of the State, and extends to every part of it. Advisory Opinion to Governor, 13 Fla. 687.

Having no doubt that the members of this Board of Legal Examiners are such *State officers* as, under the Constitution, can be created only by election by the people, or appointment *by the Governor*, and whose terms of office are by the Constitution limited not to exceed four years, we are forced to declare the whole act unconstitutional and void, because it provides, con-

trary to the Constitution, that such board shall be appointed by the Supreme Court, and because it fixes their terms of office for five years, instead of within the constitutional limit of four years.

Under the first ground of the respondent's motion to quash the alternative writ the point is made in the argument here that the relator's application for admission was made in compliance with rules one (1) and two (2) of the rules of practice prescribed for the Government of the Circuit Courts, instead of under and in pursuance of section 979 of the Revised Statutes. That under the provisions of subdivision one (1) of said section 979 of the Revised Statutes the applicant for admission is required "to satisfy the judge by satisfactory evidence that he is twenty-one years of age, and of good moral character," whereas Circuit Court rule number 1, under which the application was made, requires the applicant to present "satisfactory evidence that he is twenty-one years of age and of good moral character." There is no difference whatever between the requirements of the statute and of the rule. The statute provides that the applicant must satisfy the judge by satisfactory evidence that he is twenty-one years of age and of good moral character, whereas the rule says he must present satisfactory evidence of these facts to the judge. If the evidence presented to the judge is *satisfactory,* as the rules requires it to be, then of course the judge must be *satisfied;* and *vice versa,* if the judge is not *satisfied,* then it follows that the evidence offered is not *satisfactory.* The only difference that we can discover between the rule of court and the statute is, that the statute is open to the criticism of being tau-

tologous in its frequent use of the qualifying word "satisfy."

Having found the act to be unconstitutional and void upon the two grounds mentioned, it becomes unnecessary to consider the third ground of assault thereon. The result is that the respondent's motion to quash the alternative writ is denied, and the peremptory writ is awarded.